7130-J
MARTIN, GUNN & MARTIN, P.A.
216 Haddon Avenue, Suite 420
Westmont, New Jersey 08108
(856) 858-0900
Attorneys for Defendant, C&C Metal Products, Inc.

| | |
|---|---|
| SANDY ALMANZAR, | : UNITED STATES DISTRICT COURT |
| | : DISTRICT OF NEW JERSEY |
| | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| | : |
| C&C METAL PRODUCTS, INC., | : 2:07-cv-4002-(JLL)(CCC) |
| HONEYWELL INTERNATIONAL, INC., and | : |
| RACINE FEDERATED, INC., as Successor to | : |
| AVNET, INC., | : |
| Defendants. | : |
| | : |
| | : |

## DEFENDANT C&C METAL PRODUCT'S REPLY BRIEF TO CO-DEFENDANT MACHINERY SERVICES CORP.'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

MARTIN, GUNN & MARTIN, P.A.
216 Haddon Avenue, Suite 420
Westmont, New Jersey 08052
(T) 856-858-0900
(F) 856-858-1278
Attorneys for Defendant, C&C Metal
Products, Inc.
William J. Martin, Esquire

On the Brief:
William J. Martin, Esquire
Todd M. Parisi, Esquire

## TABLE OF CONTENTS

TABLE OF CITATIONS.................................................................................i

Legal Argument

I.      MACHINERY SERVICES CORP.'S OPPOSITION FAILS TO
        CREATE AN IMPEDIMENT FOR GRANTING THE INSTANT
        MOTION FOR SUMMARY JUDGMENT.................................................1

CONCLUSION..........................................................................................7

## <u>TABLE OF CITATIONS</u>

Crippen v. Central Jersey Concrete Pipe Company, 176 N.J. 397 (2003).....................2, 5

Laidlow v. Hariton Machinery Co., 170 N.J. 602 (2002)....................................*passim*

Mabee v. Borden, Inc., 316 N.J. Super. 218 (App. Div. 1998)....................................2

Marinelli v. Mitts & Merrill, 303 N.J. Super. 61 (App. Div. 1997)...............................3

Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 174 (1985)...................*passim*

Mull v. Zeta Consumer Products, 176 N.J. 385 (2003)...........................................2

Tomeo v. Thomas Whiteshell Constr. Co. Inc., 176 N.J. 366 (2003)......................2, 5, 6

**LEGAL ARGUMENT**

I.    **MACHINERY SERVICES CORP.'S OPPOSITION FAILS TO CREATE AN IMPEDIMENT FOR GRANTING THE INSTANT MOTION FOR SUMMARY JUDGMENT**

Co-defendant, Machinery Services Corp., relies heavily on plaintiff's testimony that it was his understanding that he was not to shut down the entire machine for "small jobs", and that plaintiff would have problems with Armando Haro because he would check the machine's production at the end of the day. (See Machinery Services Opp. Brief at p.2). Co-defendant wishes to create material facts where none exist by relying on plaintiff's understanding of what his job entailed. Co-defendant also relies own plaintiff's testimony that he learned how to clean debris off of the die-casting molds by merely observing other employees. (Id. at p.7).

Even assuming all of the facts set forth in co-defendant's opposition brief as true (for purposes of this motion only), it does not circumvent the exclusive remedy of the Workers' Compensation Act under the applicable case law. The evidence would have to show that (1) C&C Metal Products directed plaintiff to not shut down the machine and use his hand to clean debris from in between the die-casting molds, (2) C&C Metal Products trained plaintiff to do the aforementioned hazardous conduct in order to increase productivity and (3) C&C Metal Products engaged in deceptive conduct to place plaintiff in a position that it knew was substantially certain to result in injury or death. There is no evidence that C&C Metal Products misled OSHA in any way.

As is standard in countless industrial workplaces in New Jersey, employees receive on-the-job training. The employer decides how much training is necessary, and at some point, must make a decision on when the employee is ready to perform certain tasks required by the job. The fact that plaintiff testified *ad nauseum* after his injury that he was not properly trained to use this

have had knowledge of or appreciated the risk. Millison, 101 N.J. at 177. The proofs must rise

to the level of an intentional wrong. Id.

An injury "caused by either gross negligence or an abysmal lack of concern for the safety of

employees is insufficient to satisfy the 'intentional' wrong exception." See Marinelli v. Mitts &

Merrill, 303 N.J. Super. 61 (App. Div. 1997).

Co-defendant and plaintiff alike, rely upon a prior injury of another employee that

occurred in 2000. This is simply a "red herring" and not a prior close call. Employees that work

with saws will most-likely suffer a cut if they are injured at work. This does not mean that every

employee that has suffered an injury while using a saw can circumvent the Workers'

Compensation Act. In the case at bar, employees are required to work with hydraulic press

molds that may be dangerous if used improperly. Simply because another employee chose to

stick his hand in between the die-casting molds (in violation of every single warning label on the

machine) and suffered a similar injury, does not mean that plaintiff, in suffering an injury in the

same manner by improperly using the machine, is entitled to circumvent the Workers'

Compensation Act.

An employer can only do so much in training its employees in an industrial environment.

This is exactly the reason the Workers' Compensation Act was created to protect employees who

worked in such dangerous environments in light of the fact that injuries were inevitable. The Act

"involved a historic trade-off whereby employees relinquished their right to pursue common-law

remedies [against their employers] in exchange for automatic entitlement to certain, but reduced,

benefits whenever they suffered injuries by accidents arising out of and in the course of

employment." Millison, 101 N.J. at 174. "[T]he system of workers' compensation confronts

head-on the unpleasant, even harsh, reality – but a reality nevertheless – that industry knowingly

exposes workers to the risks of injury and disease." Id. at 177.

An employee trained to work with dangerous machinery in an industrial environment has to use his own judgment in order to safely perform his job functions. It is unfathomable to think that the plaintiff, in spite of the warning labels on the machine and the type of machinery he was operating, thought it prudent to place his hand in between the die-casting molds. There is no amount of training that can prevent human error.

Co-defendant should not be able to help plaintiff meet the conduct prong of the Millison/Laidlow two-prong test by submerging the Court with countless facts of what could have been done by C&C Metal Products to prevent such an accident. Taking those facts as true for purposes of this motion only, C&C Metal Products was negligent, grossly negligent at best. The standard is not the amount of negligence, but whether or not the actions were substantially certain to result in injury to the plaintiff.

Furthermore, co-defendant's opposition fails to help plaintiff show that he has satisfied the "Context" prong of the Millison/Laidlow standard since being injured while operating dangerous machinery is not plainly beyond anything the Legislature intended to immunize and is a fact of industrial life in the area of work that the plaintiff was hired to engage in. An employee is at risk of injury when doing such work regardless of any safety precautions taken by the employer. Similar to the facts found in Millision, supra, the plaintiff in the case at bar was hired to do work in which he would be exposed to dangerous conditions.

The instant case is distinguishable from those where the Court has held that the plaintiff met the "context" prong. For example, in Millision, not only did the Supreme Court find that the plaintiffs failed to meet the "conduct" prong of the test where an employers' mere knowledge and appreciation of a risk, even a strong probability of a risk, is not "substantial certainty"

4

needed to find intentional wrong, the <u>Millison</u> Court also held that employees' initial resulting asbestos-related occupational diseases were type of hazard that the Legislature anticipated would be compensable under the Workers' Compensation Act. <u>Millison</u> 101 N.J. at 179.

In <u>Laidlow</u>, <u>supra</u>, the context prong was also satisfied, permitting the plaintiff to bring an action against his employer. The <u>Laidlow</u> Court stated:

> [I]f an employee is injured when an employer deliberately removes a safety device from a dangerous machine to enhance profit or production, with substantial certainty that it will result in death or injury to a worker, and also deliberately and systematically deceives OSHA into believing that the machine is guarded, we are convinced that the Legislature would never consider such actions or injury to constitute simple facts of industrial life.

<u>Laidlow</u>, <u>supra</u> at 622.

Unlike the defendant in <u>Laidlow</u>, defendant C&C Metal Products, Inc. never disengaged safety guards in order to deceive OSHA or increase productivity. The plaintiff, in addition to not being able to satisfy the Conduct prong, unequivocally, cannot satisfy the Context prong of the test. In the instant matter, there was no deception or "extreme" conduct as in <u>Laidlow</u>, <u>supra</u>.

In <u>Crippen</u>, <u>supra</u>, the Court found that the death of Mr. Crippen was not the result of the defendant not being aware of some hazardous and dangerous conditions on the site, but from their <u>deliberate, intentional</u> decision not to address the violations cited by OSHA and identified as "Serious." <u>Crippen</u>, <u>supra</u> at 404. Their efforts were directed toward reducing the penalties and keeping OSHA away so they did not incur any further penalties, rather than making the plant safe and inviting OSHA back to assist them in moving toward a safe environment for their employees. <u>Id</u>. Thus, the Context prong was satisfied.

Again, in <u>Tomeo</u>, <u>supra</u>, the Court relied upon deliberate and intentional conduct, or the lack thereof, in determining whether the Context prong had been satisfied under the

<u>Millison/Laidlow</u> standard.  Even acknowledging that the defendant employer may have disengaged the safety lever on the snow blower, the <u>Tomeo</u> Court held that such conduct was not enough to overcome the <u>Millison-Laidlow</u> standard and permit a claim against the employer. Similarly, in the case at bar, the defendant never intentionally disengaged any safety mechanism that would place the plaintiff in a situation where there was a substantial certainty of injury in order to satisfy the Context prong of the <u>Millison/Laidlow</u> standard.

Finally, both co-defendant and plaintiff focus on the fact that after the incident in 2000 wherein an employee was injured on the instant machine when it "allegedly" cycled unexpectedly, C&C Metal Products, Inc. placed the machine back in service after it was serviced by Machinery Services Corp.  This is merely a fact of industrial life.  Machines breakdown, have mechanical issues and are serviced and/or repaired on a daily basis throughout the industrial world.  To say now, that placing a machine back into service after it was repaired, is beyond anything the Legislature contemplated when enacting the Act is meritless.  The Act was created because of all of the dangerous conditions prevalent in the industrial workplace.  This is just another facet of industrial life.

Co-defendant Machinery Services Corp.'s opposition to the instant motion for summary judgment does not create an impediment to granting the application.

## CONCLUSION

For the foregoing reasons, defendant C&C Metal Products, Inc., respectfully requests that the instant application for summary judgment be granted dismissing any and all claims against it with prejudice.

Respectfully submitted,

MARTIN, GUNN & MARTIN, P.A.
Attorneys for defendant, C&C Metal
Products, Inc.

By:____/s/ William J. Martin_____
        WILLIAM J. MARTIN